1  Tracy R. Williams, Bar No. 278429
   trwilliams@littler.com
2  Timothy M. Wojcik, Bar No. 272374
   twojcik@littler.com
3  LITTLER MENDELSON P.C.
   18565 Jamboree Road, Suite 800
4  Irvine, California  92612
   Telephone:   949.705.3000
5  Fax No.:      949.724.1201

6  Attorneys for Defendants
7  PARAMEDICS LOGISTICS OPERATING
   COMPANY, LLC; PARAMEDICS LOGISTICS
8  CALIFORNIA, LLC

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12  SIMONE NETTLES, individually, and on      Case No. 3:21-cv-8401
    behalf of other members of the general
13  public similarly situated,                **NOTICE TO FEDERAL COURT
                                              OF REMOVAL OF CIVIL
14                        Plaintiff,          ACTION FROM STATE COURT**

15          v.                                *[Filed concurrently with the
                                              Declaration of Timothy M. Wojcik;
16  PARAMEDICS LOGISTICS                      Notice of Interested Parties; Civil
    OPERATING COMPANY, LLC, a Texas           Case Cover Sheet]*
17  limited liability company; PARAMEDICS
    LOGISTICS CALIFORNIA, LLC, a
18  Delaware limited liability company; and
    DOES 1 through 100, inclusive,
19
                          Defendants.
20

21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4889-0511-4368.5 / 106391-1005

1

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF SIMONE NETTLES, AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants PARAMEDICS LOGISTICS OPERATING COMPANY, LLC ("PLOC") and PARAMEDICS LOGISTICS CALIFORNIA, LLC ("PLC") (collectively, "Defendants") hereby removes the above-entitled action, Case No. RG21108566, from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California. Removal is appropriate based on diversity of citizenship jurisdiction in accordance with the Class Action Fairness Act of 2005 ("CAFA") and because it is a civil action that presents a federal question.

## STATEMENT OF JURISDICTION

1.     This Court has original jurisdiction under 28 U.S.C. section 1332(9)(1), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), because it is a class action in which the matter in controversy exceeds $5,000,000, and it is between "citizens of different States" under CAFA.

2.     This Court also has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(b), because it is a civil action that presents a federal question.

3.     The Court also has original jurisdiction over this matter pursuant to 29 U.S.C. § 185, the Labor Management Relations Act ("LMRA").

4.     As set forth below, this case meets all of Section 1332's requirements for removal and is timely and properly removed by the filing of this Notice.

5.     Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c)(2), 1391, and 1446.

## PLEADINGS, PROCESS, AND ORDERS

6.     This lawsuit arises out of Plaintiff Simone Nettles's ("Plaintiff") employment with PLC. On August 10, 2021, Plaintiff filed her class action lawsuit in Alameda County Superior Court, styled *Simon Nettles, individually and on behalf of*

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

2

*other members of the public similarly situated, Plaintiff vs. Paramedics Logistics Operating Company, LLC, a Texas limited liability company; Paramedics Logistics California, LLC, a Delaware limited liability company; and DOES 1 through 100; Defendants*, bearing Case No. RG21108566 (the "Complaint"). The Complaint alleges claims on behalf of Plaintiff and "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." The Complaint asserted claims for: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums); (4) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (5) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid); (6) Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment); (7) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements); (8) Violation of California Labor Code § 1174(d) (Failure to Keep Requisite Payroll Records); (9) Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); (10) Violation of California Business & Professions Code §§ 17200 *et seq* ("UCL claim").

7.    Attached as **Exhibit 1** to the Declaration of Timothy M. Wojcik ("Wojcik Decl.") is a copy of the Complaint referenced herein.

8.    Attached as **Exhibit 2** to the Wojcik Declaration is a copy of all other pleadings, process, and orders and orders served on or filed by Defendants in the action pursuant to 28 U.S.C. section 1446(a).

## TIMELINESS OF REMOVAL

9.    On September 28, 2021, Plaintiff caused the Complaint to be served on Defendants. Pursuant to 28 U.S.C. section 1446(b), this Notice of Removal is therefore timely filed as it is filed within thirty (30) days after Defendants were effectively served

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

3

1    with the Complaint.

2    <u>**REMOVAL JURISDICTION PURSUANT TO CAFA**</u>

3    10.    As set forth below, this Court has jurisdiction over this case under CAFA,

4    28 U.S.C. § 1332(d).  CAFA grants federal district courts original jurisdiction over class

5    action lawsuits filed under federal or state law in which there are greater than 100

6    members of the class; the defendant is not a state, state official, or other governmental

7    entity; any member of a plaintiff class is a citizen of a state different from any defendant;

8    and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28

9    U.S.C. § 1332(d).  This case meets each of those requirements and may be removed

10    pursuant to the provisions of 28 U.S.C. § 1441(a).

11    **A.    Plaintiff's Case Is Pled as a Class Action**

12    11.    Under CAFA, a "class action" means "any civil action filed under Rule 23

13    of the Federal Rules of Civil Procedure or similar State statute or rule of judicial

14    procedure authorizing an action to be brought by one or more representative persons as

15    a class action." 28 U.S.C. § 1332(d)(1)(B).

16    12.    Plaintiff's Complaint asserts that, consistent with Rule 23, Plaintiff brought

17    this action "on her own behalf and on behalf of all other members of the general public

18    similarly situated" who are or were employed by Defendants as exempt and non-exempt

19    employees throughout California. (*See, e.g*., Complaint, ¶¶ 13-14.)  Plaintiff is seeking

20    to represent the putative class for alleged wage and hour violations at any time between

21    August 10, 2017, to the date of final judgment. (Complaint, ¶ 14.) Thus, Plaintiff has

22    brought a class action.

23    **B.    Plaintiff Brought this Action on Behalf of More Than 100 Persons**

24    13.    CAFA provides that "the number of members of all proposed plaintiff

25    classes in the aggregate [not be] less than 100." 28 U.S.C. § 1332(d)(5)(B).  CAFA

26    defines "class members" as those "persons (named or unnamed) who fall within the

27    definition of the proposed or certified class in a class action."   28 U.S.C.

28    §1332(d)(1)(D).

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

4

14.    Here, the putative classes Plaintiff purports to represent exceeds 100 members.  PLC employed approximately 576 non-exempt employees in California during the relevant time period. (Fountain Decl., ¶ 11.) CAFA's numerosity requirement is thus satisfied.  *See* 28 U.S.C. § 1332(d)(5)(B).

**C.    Defendants Are Not States, State Officials or Governmental Entities**

15.    Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

16.    Defendants are limited liability companies, not states, state officials or other governmental entities exempt from the CAFA.

**D.    Plaintiff is a Citizen of California and Defendants Are Not**

17.    CAFA diversity jurisdiction exists if "any member of a class of plaintiffs is a citizen of a state different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969).

18.    To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and domiciled in a particular state. *Bank of N.Y. Mellon v. Nersesian*, 2013 WL 8284799, at *7 (C.D. Cal. 2013) (citing *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983)).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *Nersesian*, 2013 WL 8284799, at *7 (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  Residence is *prima facie* evidence of one's domicile. *Sadeh v. Safeco Ins. Co.*, 2012 WL 10759737, at *4 (C.D. Cal. 2012) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)).  Plaintiff is a resident of California. (Complaint, ¶ 5.)  Thus, Plaintiff is a citizen of California.

19.    Conversely, Defendants are not citizens of California. Defendants are both limited liability companies organized under the laws of the State of Delaware.

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4889-0511-4368.5 / 106391-1005

5

(Fountain Decl., ¶¶ 5-6.) For diversity jurisdiction purposes under CAFA, the citizenship of a limited liability company is determined by the state under whose laws the company is organized and where it has its principal place of business under 28 U.S.C section 1332(d)(10). *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010); *see also Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) (citing § 1332(d)(10) and noting that "[f]or qualifying class actions ..., CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes"); *Parker v. Dean Transportation, Inc.*, No. CV 13-2621-BRO(VBKX), 2013 WL 12091841, at *8 (C.D. Cal. June 26, 2013) (discussing that in CAFA actions, an LLC may be deemed a citizen of the state of its principal place of business); *Marroquin v. Wells Fargo, LLC*, 2011 WL 476540, at *2 (S.D. Cal. Feb. 3, 2011) (concluding pursuant to § 1332(d)(10) that LLC defendant was California citizen based on its principal place of business); *Heckemeyer v. NRT Missouri, LLC*, 2013 WL 2250429 (E.D. Mo. May 22, 2013) (holding that Congress chose to treat limited liability companies like corporations for purposes of determining citizenship under CAFA). An entity's principal place of business is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center," which is typically the entity's headquarters. *Hertz Corp. v. Friend*, 559 U.S.77; 130 S. Ct. 1181, 1186; 175 L. Ed. 2d 1029, 1034 (2010).

20.    At the time this action was commenced in state court, and through the present, PLOC's principal place of business has been, and continues to be Tucker, Georgia.  During this time period, PLOC's Chief Executive Officer, Chief Financial Officer, President of Human Resources, and payroll personnel have worked and continue to work in Tucker, Georgia; all of PLOC's major decisions and day-to-day decisions are made by PLOC's officers from Tucker, Georgia; and PLOC's business operations have been and continue to be directed, controlled and coordinated by its officers from Tucker, Georgia.  Thus, PLOC is a citizen of Georgia for purposes of

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

6

1   diversity.

2      21.    At the time this action was commenced in state court, and through the

3   present, PLC's principal place of business has been, and continues to be Tucker,

4   Georgia.   During this time period, PLC's Chief Executive Officer, Chief Financial

5   Officer, President of Human Resources, and payroll personnel have worked and

6   continue to work in Tucker, Georgia; all of PLC's major decisions and day-to-day

7   decisions are made by PLC's officers from Tucker, Georgia; and PLC's business

8   operations have been and continue to be directed, controlled and coordinated by its

9   officers from Tucker, Georgia.   Thus, PLC is a citizen of Georgia for purposes of

10  diversity.

11     22.    The Complaint names as defendants "DOES 1 through 100, inclusive."

12  Pursuant to 28 U.S.C. section 1441(a), however, the citizenship of defendants sued

13  under fictitious names must be disregarded for the purpose of determining diversity

14  jurisdiction. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

15     23.    Accordingly, the named Plaintiff is a citizen of states different from

16  Defendants, and diversity exists for purposes of CAFA jurisdiction.   See 28 U.S.C. §§

17  1332(d)(2)(A), 1453.

18     **E.    The Amount in Controversy Exceeds $5,000,000.**[1]

19     24.    This Court has jurisdiction under CAFA, which authorizes the removal of

20  class actions in which, among the other factors mentioned above, the amount in

21  controversy for all class members exceeds $5,000,000.   28 U.S.C. § 1332(d).   "The

22  claims of the individual class members shall be aggregated to determine whether the

23  matter in controversy exceeds" this amount.   28 U.S.C. § 1332(d)(6).

24     25.    Plaintiff's Complaint does not allege the amount in controversy.   In any

25  event, conclusory allegations in this regard are disregarded when determining the

26

27  [1]    The alleged damages calculations contained below are for purposes of removal
    only.   Defendants expressly deny that Plaintiff can properly certify a class and that
28  Plaintiff or the putative class are entitled to any relief whatsoever.   Defendants expressly
    reserve the right to challenge Plaintiff's alleged damages in this case, including the
    proffered methodology for such calculations.

amount in controversy for CAFA removals. *See Dart Cherokee Basin Operating Co. LLC v. Owens*, 574 U.S. 81, 83 (2014). The notice of removal need simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. at 554; *see also Ibarra v. Manheim Invests., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (same). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart*, 574 U.S. at 89.

26. "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal quotations omitted); *see also Schere v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by plaintiff's complaint). The estimate of the amount in controversy should not be based on the "low end of an open-ended claim," but rather on a "reasonable reading of the value of the rights being litigated." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (citation omitted).

27. Further, as one district court held, "[u]nder this standard, the removing party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Cagle v. C & S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS 21571, at *19-20 (E.D. Cal. 2014) (citations omitted) (denying remand motion). That court noted that "[w]hen a '(d)efendant's calculations (are) relatively conservative, made in good faith, and based on evidence whenever possible,' the court may find that the '(d)efendant has established by a preponderance of the evidence that the amount in controversy is met.'" *Id*. at *20, quoting *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (citations omitted). Importantly, Defendants need not provide summary judgment-type evidence. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Cagle*, 2014

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

8

U.S. Dist. LEXIS 21571, at *21.

28.  While Defendants deny Plaintiff's claims of wrongdoing and her request for relief, the facial allegations in Plaintiff's Complaint, when viewed in the light most favorable to Plaintiff, exceed the $5,000,000 jurisdictional minimum.  *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied).

29.  As discussed above, Plaintiff filed her Complaint on August 10, 2021, and alleges claims on behalf of herself and other non-exempt employees for unpaid overtime, unpaid meal and rest break premiums, unpaid minimum wages, waiting time penalties, wages not timely paid during employment, non-compliant wage statements, failure to keep requisite payroll records, unreimbursed business expenses, and violation of the UCL. (Complaint, ¶¶ 14, 48-118.)

30.  PLC began employing hourly paid employees in California on or around March 29, 2018 when PLC purchased the assets of Paramedics Plus, L.L.C.  PLC ceased conducting business operations in California in our around July 2019.

31.  Plaintiff was hired by PLC on November 26, 2018, as a Logistics Coordinator.  Plaintiff's employment with PLC ended on June 30, 2019.  Plaintiff earned $19.68 per hour on a bi-weekly basis at the time of her separation.

32.  PLC employed approximately 576 hourly paid employees in California during the period of March 29, 2018 through July 2019.  There are approximately 67 workweeks at issue during this time period.  The average hourly rate of pay for non-exempt employees during this time period was approximately $29.97.

### 1.    Amount in Controversy – Plaintiff's Claim for Unpaid Meal Premiums

33.  In her Second Cause of Action, Plaintiff seeks to recover premium pay under Labor Code section 226.7 for Defendants' alleged failure to provide legally compliant meal periods, in the amount of one hour's pay at the regular rate of pay. (*See*

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4889-0511-4368.5 / 106391-1005

9

1    Complaint, ¶¶ 57-67.)  Plaintiff's cause of action for violation of the UCL extends the

2    statute of limitations on Plaintiff's meal period and rest break causes of action to four

3    years.  *See* Cal. Bus. & Prof. Code § 17208.

4        34.    While Defendants deny the validity and merit of Plaintiff's meal period

5    claim, for purposes of removal only, based on Plaintiff's legal theory, assuming two

6    meal period violations per week, Plaintiff seeks to recover at least **$2,313,204.40.**

7    ($29.97 x 2 x 67 weeks x 576 individuals).  Alternatively, assuming that just **half** of the

8    class could recover such meal period premium pay, Plaintiff seeks to recover at least

9    **$1,156,602.20** ($29.97 x 2 x 67 weeks x 288 individuals).  *See Mortley v. Express Pipe*

10   *& Supply Co.*, Case No. SACV 17–1938–JLS–JDE, 2018 WL 708115, at *4 (C.D. Cal.

11   Feb. 5, 2018) (assumption of two missed meal periods per week reasonable based on

12   allegations of a policy and practice of understaffing and "routine and systematic"

13   violations); *Giannini v. Northwestern Mut. Life Ins. Co.*, No. C 12–77 CW, 2012 WL

14   1535196, at *3 (N.D. Cal. Apr. 30, 2012) (finding 100% violation rate for meal period

15   claim reasonable based on allegation that the putative class members "routinely" did

16   not receive meal periods); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S–11–1433

17   KJM DAD, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (allegations that the

18   putative class were "routinely" denied meal periods and defendant had a policy and

19   practice of not paying for all hours worked supported a 50% violation rate).

20       **2.**    **Amount in Controversy – Plaintiff's Claim for Unpaid Rest**

21           **Period Premiums**

22       35.    In her Third Cause of Action, Plaintiff seeks to recover premium pay under

23   Labor Code section 226.7 for failing to provide legally compliant rest periods, in the

24   amount of one hour at the regular rate of pay.  (*See* Complaint, ¶¶ 68-76.)

25       36.    While Defendants deny the validity and merit of Plaintiffs' rest break

26   claim, for purposes of removal only, based on Plaintiff's legal theory, assuming two

27   rest break violations per week, Plaintiff seeks to recover at least **$2,313,204.40** ($29.97

28   x 2 x 67 weeks x 576 individuals).  Alternatively, assuming that just **half** of the class

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4889-0511-4368.5 / 106391-1005

10

could recover such rest break premium pay, Plaintiff seeks to recover at least **$1,156,602.20** ($29.97 x 2 x 67 weeks x 288 individuals). *See Mortley*, Case No. SACV 17–1938–JLS–JDE, 2018 WL 708115, at *4 (assumption of two missed rest periods per week reasonable based on allegations of a policy and practice of understaffing and "routine and systematic" violations); *Giannini*, No. C 12–77 CW, 2012 WL 1535196, at *3 (finding 100% violation rate for rest period claim reasonable based on allegation that the putative class members "routinely" did not receive rest periods).

### 3.    Amount in Controversy – Failure to Pay Minimum Wage

37.    In her Fourth Cause of Action, Plaintiff alleges Defendants failed to pay minimum wages under Labor Code sections 1194, 1197, and 1197.1, as to all putative class members and, specifically, alleges that Defendants failed to pay Plaintiff and putative class members for all hours worked. (*See* Complaint, ¶¶ 77-82.) Plaintiff also seeks liquidated damages pursuant to California Labor Code § 1194.2. (Complaint, ¶ 82.)

38.    While Defendants deny the validity and merit of Plaintiff's minimum wage claim, for purposes of removal only, based on Plaintiff's legal theory and assuming a four-year limitations period pursuant to Plaintiff's UCL claim (*see* Cal. Bus. & Prof. Code § 17208), there are approximately 67 workweeks at issue. Based on the average hourly rate of $29.97 during the applicable period, and assuming one hour of unpaid work per week during the putative class period, an individual putative class member employed during this period would seek to recover at least $2,007.99 ($29.97 x 67 weeks). Based upon an estimated 576 individuals, Plaintiff seeks to recover at least **$1,156,602.20** ($2,007.99 x 576 individuals). Alternatively, assuming even only **half** of the putative class is able to recover damages for the entire class period, Plaintiff therefore seeks to recover at least **$578,301.12** ($2,007.99 x 288 individuals).[2]

---

[2]    Defendants do not concede that they are in any way responsible for alleged wage and hour violations that pre-date any employee's date of hire by Defendants.

39.     Plaintiff's request for liquidated damages in an amount equal to the unpaid minimum wages serves to double the above amounts.  The calculations for liquidated damages are particularly conservative because they assume none of the alleged work performed would have triggered overtime (or double time) premiums.  The amount in controversy concerning Plaintiff's claim for liquidated damages ranges from **$578,301.12** (assuming 288 individuals) to **$1,156,602.24** (assuming 576 individuals).

### 4.     Amount in Controversy – Plaintiff's Waiting Time Penalties Claim (Labor Code § 203)

40.     In her Fifth Cause of Action, Plaintiff seeks waiting time penalties pursuant to California Labor Code section 203. (Complaint, ¶¶ 87-88.) The statute of limitations for Plaintiff's Labor Code section 203 waiting time penalty claim is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages").

41.     The Labor Code's penalty for failure to pay wages at termination is up to 30 days' wages for each employee. Cal. Labor Code § 203(a).

42.     For purposes of removal only, based on a review of their records, approximately 544 non-exempt employees separated from PLC after August 10, 2018 (three years prior to the filing of the Complaint). The average pay rate for employees who separated from Defendants since August 10, 2018 is approximately $30.23, which amounts to an estimated average daily wage of $241.84 ($30.23 x 8 hours).  Using this estimated average daily wage, the estimated average maximum waiting time penalty is $7,255.20.  *See* Cal. Lab. Code § 203(a) (capping waiting time penalties at 30 days).

43.     The amount in controversy for Plaintiff's Fifth Cause of Action is approximately **$3,946,828.80** (544 employees x $7,255.20).  Alternatively, assuming **half** of the putative class is able to recover waiting time penalties, the amount in

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4889-0511-4368.5 / 106391-1005

12

controversy for Plaintiff's Fifth Cause of Action is approximately **$1,973,414.40** (272 employees x $7,255.20).

### 5.    Amount in Controversy – Plaintiff's Claim for Attorneys' Fees

44.    Finally, Plaintiff seeks attorneys' fees and costs in her Complaint. (Complaint, Prayer for Relief, ¶¶ 8, 15, 27, 51, 56.)  It is well settled that, in determining whether a complaint meets the amount in controversy requirement, the Court should consider the aggregate value of claims for damages *as well as* attorneys' fees.  *See*, *e.g.*, *Galt GIS v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). This, too, serves to further increase the amount in controversy.

45.    In fact, the Ninth Circuit has an established benchmark of 25 percent of the amount recoverable for an award of attorneys' fees in class actions. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (same). This 25 percent figure has been repeatedly relied upon by the courts to determine the amount in controversy for removal purposes. *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. June 14, 2013) (including 25 percent attorneys' fees to increase the amount in controversy to above $5 million CAFA threshold); *Giannini v. Nw. Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (same).

46.    In California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be 25 percent to 30 percent of the settlement and, thus even a conservative estimate of attorneys' fees in this matter would be far in excess of $1 million.[3]

---

[3]    *See Abasi v. HCA, the Healthcare Co. Inc.*, C.D. Cal. No. CV 03-7606 (May 9, 2005) (approving $4.75 million settlement for claims of unpaid overtime, meal and rest break periods; attorney's fee award totaling over $1.2 million (25 percent)); *Burns v. Merrill Lynch*, N.D. Cal. No. 3:04-cv-04135 (August 2005) (approving $37 million settlement for claims of failure to pay overtime; attorneys' fees of $9.25 million (25

47.    Furthermore, in affirmatively ruling that attorney's fees "may be included in the amount in controversy," see *Galt G/S*, 142 F.3d at 1155, the Ninth Circuit "must have anticipated that district courts would project fees beyond removal." *Simmons*, 209 F. Supp. 2d at 1034-35. Just as the "court determines the amount in controversy based on the damages that can reasonably be anticipated at the time of removal," it also must "measure . . . fees . . . that can reasonably be anticipated at the time of removal, not merely those already incurred." *Id.*; *see also Cagle*, 2014 WL 651923, at *10-11 (holding that an estimate of the amount of attorney hours through trial was a reasonable estimate for purposes of determining amount in controversy); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (holding that for determining amount in controversy, attorneys' fees should be assessed through trial, and finding amount in controversy met in part by reasonable estimate of fees). Therefore, the Court may consider a 25 percent attorney's fees award for the purposes of calculating the amount in controversy.

48.    Based on the above, the amount in controversy is conservatively estimated at $5,443,221.04 for Plaintiff's Second, Third, Fourth, and Fifth Causes of Action. This subtotal exceeds $5,000,000 absent any inclusion of attorneys' fees. However, considering attorneys' fees at the benchmark percentage of 25 percent further increases the amount in controversy by $1,360,805.26, a total amount in controversy of **$6,804,026.30**, without accounting for damages and penalties sought by Plaintiff in the her First, Sixth, Seventh, Eighth, Ninth and Tenth Causes of Action. When accounting for the entire estimated 576 class members, the total amount in controversy is estimated at **$13,608,052.60**.

---

percent)); *Coldiron v. Pizza Hut-Yum! Brands, Inc.*, C.D. Cal. No. 03-5865 (June 2006) (approving $12.5 million settlement for alleged improperly classified restaurant managers as exempt from overtime with attorneys' fees of $3.125 million (25 percent)); *Mousai v. E-Loan, Inc.*, N.D. Cal. No. 3:06-cv-01993-SI (January 12, 2007) (preliminary approval of settlement of $13.6 million for claims of unpaid overtime, and meal and rest break violations; attorneys' fees award estimated at $3.4 million (25%)).

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

### 6. Amount in Controversy – Summary

49. As explained above, removal of this action is proper, as the aggregate value of Plaintiff's claims for failure to pay meal and rest period premiums, unpaid minimum wage and related liquidated damages, untimely final wages, and attorneys' fees are well in excess of the CAFA jurisdictional requirement of $5 million. *See* 28 U.S.C. § 1332(d)(2). Notably, as discussed above, this estimate does not account for the damages and penalties that Plaintiff contends she and the putative class members are owed in her First, Sixth, Seventh, Eighth, and Ninth and Causes of Action. Nor does it include any other damages or restitution that Plaintiff seek under her UCL claim (Tenth Cause of Action). Figuring those claims into the equation further reinforces that the amount in controversy exceeds $5 million.

50. Accordingly, although Defendants deny Plaintiff's claims as alleged in the Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the $5,000,000 threshold required under CAFA.

| Plaintiff's Alleged Claim | Amount in Controversy (Half Class) | Amount in Controversy (Full Class) |
|---|---|---|
| Meal Period Premiums | $1,156,602.20 | $2,313,204.40 |
| Rest Break Premiums | $1,156,602.20 | $2,313,204.40 |
| Unpaid Minimum Wages | $578,301.12 | $1,156,602.24 |
| Liquidated Damages for Unpaid Minimum Wages | $578,301.12 | $1,156,602.24 |
| Waiting Time Penalties | $1,973,414.40 | $3,946,828.80 |
| TOTAL (w/o attorney's fees) | $5,443,221.04 | $10,886,442.08 |
| Attorneys' Fees | $1,360,805.26 | $2,721,610.52 |
| AMOUNT IN CONTROVERSY | $6,804,026.30 | $13,608,052.60 |

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

15

## REMOVAL JURISDICTION PURSUANT TO SUBJECT MATTER JURISDICTION BASED ON A FEDERAL QUESTION

51.    A state-court action may be removed to federal court if it qualifies as a civil action of which the district courts of the United States have original jurisdiction unless Congress expressly provides otherwise. 28 U.S.C. § 1441(a).  28 U.S.C. 1331 provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

52.    Plaintiff's claim requires interpretation of a collective bargaining agreement ("CBA") and thus is completely preempted by federal law under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Section 301 of the LMRA provides "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a); *Firestone v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). To ensure uniform interpretations of CBAs, federal law preempts the use of state contract law in collective bargaining agreement interpretation and enforcement. *See Lingle v. Norge Div. of Magic Chef Inc.*, 486 U.S. 399, 411 (1988).

53.    Further, all state law claims raised by a union-represented employee that require interpretation of a CBA must be brought pursuant to Section 301. *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985). "The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988); *see Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

4889-0511-4368.5 / 106391-1005

16

54.    Section 301 specifically has been held to preempt California state law claims that are substantially dependent upon interpretation of a CBA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019); *Firestone*, 219 F.3d at 1066-67. This is so even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. *Curtis*, 913 F.3d at 1152 ("Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (citing *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

A.    **Plaintiff's Employment Was Governed by A Valid CBA That Provided for Premium Wages for all Overtime Hours and a Regular Hourly Pay Rate of Not Less Than 30% of Minimum Wage.**

55.    On or around June 16, 2016, Paramedics Plus, L.L.C. entered into a collectively bargained labor agreement ("2016 CBA") with NAGE EMS Local Union No. 510 (the "Union").  The 2016 CBA expressly provided for the wages, hours and working conditions for all hourly paid employees of Paramedics Plus who worked in California in one of the following job classifications: Emergency Medical Technicians ("EMTs"), Advanced EMTs, EMT-Paramedics, Assistant Supervisors, Customer Service Representatives, Couriers, Vehicle Supply Technicians, Logistics Coordinators and Schedulers.  (Fountain Decl. ¶ 9, Ex. 1, 2016 CBA.)

56.    The 2016 CBA provides for premium wage rates for all overtime hours worked.   (Fountain Decl., Ex. 1, 2016 CBA, Article 15.3.)

57.    The 2016 CBA provides for a regular hourly rate of pay of not less than 30 percent more that the state minimum wage.  This is demonstrated in the following table:

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

17

| Effective Date | California Minimum Wage by Year (Employers with 26 or More Employees) | Minimum Hourly Wage Required to Exceed Applicable State Minimum Wage by 30% | Lowest Hourly Rate Provided for in 2016 CBA |
|---|---|---|---|
| Jan. 1, 2017 | $10.50 | $13.65 | $15.77 |
| Jan. 1, 2018 | $11.00 | $14.30 | $16.08 |
| Jan. 1, 2019 | $12.00 | $15.60 | $16.49 |

Cal. Lab. Code § 1182.12(b)(1); (Fountain Decl., Ex. 1, 2016 CBA, Article 15.1 (Wage Scales) and Addendum "C".)

58. On or around March 29, 2018, Defendants purchased all assets of Paramedics Plus. (Fountain Decl. ¶ 7.) As part of the 2018 asset purchase, Paramedics Plus assigned all rights under the 2016 CBA to Defendants, and Defendants assumed and recognized the 2016 CBA. (Fountain Decl. ¶ 9.)

59. PLC employed Plaintiff as Logistics Coordinator from approximately November 26, 2018 through June 30, 2019. At all times throughout her employment with PLC, Plaintiff was a member of the Union and her wages, hours and working conditions were governed by the 2016 CBA. (Fountain Decl. ¶ 13.)

60. The Union is a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

61. Based on the allegations in the Complaint, Defendants are employers within the meaning of the LMRA, 29 U.S.C. § 152(2).

62. Sections 1.1 of the 2016 CBA provides that the Union is the exclusive bargaining representative of the EMTs and Logistics Coordinators, among others, covered by the CBA pursuant to its craft jurisdiction. (Fountain Decl., Ex. 1, 2016 CBA, Secs. 1.1). The 2016 CBA covers the employment conditions at issue in Plaintiff's Complaint, including hours of work, meal periods, rest periods, wage rates and payment, overtime, and business expenses. (Fountain Decl., Ex. 1, 2016 CBA, Articles 10, 15, 16.)

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

18

**B.** **Plaintiff's Failure to Reference the CBA or Section 301 of the LMRA in Her Complaint Does Not Preclude Removal**

63.     Plaintiff cannot "artfully plead" her complaint to conceal its true nature. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

64.     Plaintiff's failure to reference to Section 301 does not preclude removal. *See Milne Emp. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991). The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

65.     An artfully pled state law claim is properly "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

**C.** **Resolving Plaintiff's Claims Requires Interpretation of the CBA**

66.     The alleged Labor Code violations underlying Plaintiff's Complaint are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

19

agreement. *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991); *see also Caterpillar Inc.*, 482 U.S. at 394. Thus, the Court must interpret the 2016 CBA to analyze Plaintiff's claims. The Court cannot simply look to state law to resolve Plaintiff's artfully pled claims for breach of a CBA.

67. The 2016 CBA contains specific language governing hours of work, meal periods, rest periods, wage rates and payment, overtime, and business expenses. (Fountain Decl., Ex. 1, 2016 CBA, Articles 10, 13, and 15.) The CBA also provides for a grievance process and arbitration to resolve any disputes arising under the CBA. (Fountain Decl., Ex. 1, 2016 CBA, Article 6.) Resolving Plaintiff's claim will require the Court to interpret each of these provisions in the applicable CBA.

68. As an example, Plaintiff's claim based on Defendants' alleged failure to pay overtime wages under Labor Code section 510 is preempted by Section 301 of the LMRA because the claim requires the Court to analyze and interpret the CBA's overtime provisions. Cal. Lab. Code § 510 ("Any work in excess of 8 hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."); *but see* Cal. Lab. Code § 514 ("Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for wages, hours of work, and working conditions of the employees, and if the agreement provides premium wages for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30% more than the state minimum wage.")*; see also, Curtis*, 913 F.3d 1146, 1155 (9th Cir. 2019) ("By its terms, therefore, the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA. If Curtis's CBAs in this case meet the requirements of section 514, Curtis's right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301"); s*ee also Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 110 (2014) (finding the CBA at issue fell squarely within Labor Code § 514's terms, and "[n]othing in section 514 require[d]" the employer to look to the definition of overtime in section 510.").

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

69.     All of Plaintiff's claims are, in essence, alleged violations of the CBA. Thus, the Court must interpret the 2016 CBA's grievance provision. (*See* (Fountain Decl., Ex. 1, 2016 CBA, Article 6.) Specifically, the Court must determine whether Plaintiff was first required to exhaust the grievance procedures, whether she did in fact exhaust those procedures, and whether she agreed to arbitrate all or some of her claims. Each of these questions is reserved for federal courts pursuant to the LMRA; indeed, Section 301 preemption aims to promote extra-judicial dispute resolution pursuant to the parties' agreed form of dispute resolution. *Curtis*, 913 F.3d at 1152 (observing "the labor arbitrator is usually the appropriate adjudicator for CBA disputes" and that "grievance and arbitration procedures provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process.") (internal citation omitted).

70.     Here, the CBA "sets forth the parties' agreement understanding." (*See* (Fountain Decl., Ex. 1, 2016 CBA, Article 24, § 24.3.) Moreover, Article 6 states specifically: "In the event that any grievance arises concerning the interpretation or application of any of the terms of this Agreement and/or any dispute concerning wages, benefits, and working conditions, such matters shall be adjusted according to the procedures and conditions set forth below [in Article 6]." (*Id.*, Article 6.) Accordingly, an alleged violation of the CBA is subject to the grievance procedure, which serves the underlying purposes of the LMRA. Thus, no part of Plaintiff's claim may be resolved without interpreting provisions of the CBA.

71.     Plaintiff's claims are substantially dependent upon the interpretation of the 2016 CBA's terms and provisions.  In fact, the 2016 CBA's terms and provisions govern all of the conduct that forms the basis for Plaintiff's Complaint and are thus essential to the resolution of Plaintiff's claims. Plaintiff has thus alleged LMRA claims and, for that reason, the Complaint is removable under federal question jurisdiction.

72.     To the extent there are certain underlying alleged Labor Code violations that do not arise under Section 301 of the LMRA, the class action claims based on those

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

21

violations remains within the supplemental jurisdiction of the Court under 28 U.S.C. § 1367(a) in that they are so related to the federal cause of action that they form part of the same case or controversy under Article III of the United States Constitution. *See Buck v. Cemex, Inc.*, 2013 U.S. Dist. LEXIS 124111, at *17 (plaintiff's additional claims of failure to provide accurate wage statements, failure to timely pay all final wages and unfair competition came within the supplemental jurisdiction of the Court even if only tangentially involved with the CBA); *see also Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1100 (N.D. Cal. 2014) (recognizing that plaintiff's additional state law claims under California statutory and common law, including various provisions of the Labor Code and IWC Orders, all "derive from a common nucleus of operative fact" as plaintiff's meal period and overtime claims and "are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."). Thus, this action is removable in its entirety.

## NOTICE TO STATE COURT AND PLAINTIFF

73.    Concurrently with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be given by the undersigned to counsel for Plaintiff, Lawyers for Justice, PC. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of Alameda.

Dated:    October 28, 2021

LITTLER MENDELSON P.C.

*/s/ Timothy M. Wojcik*
Tracy R. Williams
Timothy M. Wojcik

Attorneys for Defendants
PARAMEDICS LOGISTICS
OPERATING COMPANY, LLC;
PARAMEDICS LOGISTICS
CALIFORNIA, LLC

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

22

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action. My business address is 633 West Fifth Street, 63rd Floor, Los Angeles, CA 90071.

On **October 28, 2021**, I served the within documents described as: **NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:

Edwin Aiwazian
LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel.:    (818) 265-1020
Fax:    (818) 265-1021
Email:        edwin@calljustice.com

***Attorneys for Plaintiff,***
***Simone Nettles***

☒        **BY ELECTRONIC MAIL WHERE INDICATED:** Pursuant to FRCP 5(b)(2)(E), I served the foregoing document described by emailing to it each of the aforementioned electronic mail addresses and the transmission was reported as complete and without error. My email address is kalvarez@litler.com.

I hereby certify that I am employed in the Office of a member of the Bar of this Court at whose direction the service was made. Executed on **October 28**, **2021** at Los Angeles, California.

*Kim Alvarez*
_____
Kim Alvarez

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

4889-0511-4368.5 / 106391-1005

23